# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

In re: PRIMARY PROVIDERS OF ALABAMA, INC.,

EIN: xx-xxx9960

Debtor.

Case No.: 18-83207-CRJ11

CHAPTER 11

## MOTION FOR APPROVAL OF DEBTOR'S ASSUMPTION OF UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY

COMES NOW Primary Providers of Alabama, Inc. (the "Debtor"), and shows unto this Honorable Court the following:

1. On October 26, 2018, the Debtor commenced with this Court a voluntary case under Chapter 11 of Title 11, United States Code (the "Petition Date").

2. This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtor operates a medical clinic in Madison County, Alabama.

4. Prior to the Petition Date, the Debtor entered into an office lease agreement from which it conducts its business operations (the "Lease"). True and correct copies of the Lease agreement is attached hereto as Exhibit "A."

5. The Debtor is not in default under the terms of the Lease.

6. Assumption of the Lease is necessary for the Debtor's continued operations and its successful Chapter 11 reorganization.

7. Assumption of the Lease subject to the terms contained therein is in the best interest of the Debtor and its bankruptcy estate.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests the Bankruptcy Court to enter an order:

    A.    Approving the Debtor's assumption of the Lease;

    B.    Authorizing the Debtor to execute and deliver any and all other documents which may be necessary or appropriate to effectuate the assumption of the lease described herein; and

    C.    Granting such further and different relief as the Bankruptcy Court may deem just and appropriate.

Respectfully submitted this the 27th day of December, 2018.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard III
Tazewell T. Shepard IV
*Attorneys for Debtor*

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL 35804
Tel: 256/512-9924
Fax: 256/512-9837
ty@ssmattorneys.com

## CERTIFICATE OF SERVICE

This is to certify that I have this the 27th day of December, 2018 served the foregoing motion on the 20 largest unsecured creditors as listed on the Clerk's Certified Matrix, all parties requesting notice, and Richard Blythe, Office of the Bankruptcy Administrator, P.O. Box 3045, Decatur, AL 35602, and Monrovia Investment Group, ATTN: Marty Walker, 1892 Jeff Road, Huntsville, AL 35806 by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV

*Signed Final copy*

**STATE OF ALABAMA**

**COUNTY OF MADISON**

**LEASE AGREEMENT**

THIS LEASE AGREEMENT ("Lease") is made and entered into as of the __25th__ day of __November 2015__, by and between Monrovia Investment Group, LLC ("Landlord") and Allman Family Medicine, PC ("Tenant").

**WITNESSETH:**

In consideration of the rents hereinafter agreed to be paid and in consideration of the mutual covenants and agreements hereinafter recited, Landlord does hereby lease and demise unto Tenant and Tenant does hereby lease and take as Tenant from Landlord those certain Premises with improvements thereon containing approximately **3519** square feet of dedicated space (the "Premises") within the Medical Mall building ("Building") situated on certain land at **1878 Jeff Road, Huntsville, AL 35806**, in the City of **Huntsville**, County of **Madison**, State of **Alabama**, and being more particularly described as a combination of Suite G and Suite H, together with the non-exclusive right to use in common with Landlord and other tenants of the Building the common areas in and about the Building and the property of which it is a part, including without limitation all hallways, sidewalks, lobbies, parking areas, driveways, elevators, stairways, restrooms, and the like.

To Have and to Hold the said Premises into the Tenant upon the Tenant upon the following terms and conditions;

1. **TERM.** The Term of the Lease shall be for a period of __5__ years, commencing on the _1st_ day of November, 2014, at 12:01 a.m., and ending on the 31st day of October, 2019.

2. **OPTION TO RENEW.** So long as Tenant is not in default hereunder, it is agreed that at the expiration of the initial term (the "Initial Term") of this lease, Tenant shall have the right and option to renew this Lease for one additional four year term (the "Renewal Term"). Each such Renewal Term shall commence as of the end of the then current term of this Lease.

   Two hundred ten days (210) prior to the expiration of this lease, Landlord will provide to Tenant the monthly rental cost of the new lease. If Tenant agrees to the terms of the new lease, Tenant will execute a signed lease agreement before the expiration of the 180 days prior to the expiration of the Initial Term or in this case, the Renewal Term of the Lease. If Tenant desires not to exercise this right and option, Tenant shall give the Landlord written notice not less than one hundred eighty (180) days prior to the expiration of the Initial Term or Renewal Term of this Lease. If Tenant desires not to exercise the option to renew the lease, the Tenant and Landlord will then enter into negotiations to determine the lease terms in the event that the Tenant should desire to occupy the leased space past the existing expiration of the lease agreement.

3. **RENTAL.** Tenant shall pay to Landlord the sum of Thirty Seven Thousand One Hundred Seventy Seven Dollars and 38/100 **($37,177.38)** per year, (which is equivalent to a rate of **$16.50 per square foot per year at 3519 square feet with a $107,280.60 building allowance from the Landlord to the Tenant less a $2,850 charge from the Landlord to the Tenant for the remodeling of the suite if Tenant chooses to leave after the 5 year lease) payable** in monthly installments of Three Thousand Ninety Eight Dollars and 11/100 **($3,098.11)**, each installment due on the first (1st) day of each month, in advance, during the Initial Term and any Renewal Term of this Lease, but payable on or before the fifth (5th) day of the month. Rent payments received after the fifth day of each month, either in person or in the mail will be assessed a $100 late fee. In the event the Term shall commence on a day other than the first (1st) day of a month or terminate on a day other than the last day of a month, the rent for such partial month shall be prorated. In addition, there shall be a monthly assessment of **$40.00** for water usage. (noted in paragraph 12)

4. **SURRENDER OF PREMISES.** At the termination of this Lease, Tenant shall surrender the Premises and all keys, if any, to Landlord. The Premises shall be in the same condition as the commencement of the Term, normal wear and tear and loss from casualty expected, and Tenant shall remove from the Premises all of its property.

5. **SUBLETTING AND ASSIGNMENT.** Tenant may not sublease or assign all or any part of the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld, delayed, or conditioned.

6. **USE.** The Premises shall be used and occupied by Tenant as a medical facility.
Tenant, at tenant's expense, shall comply with all applicable rules, regulations, ordinances, and laws of governmental authorities having jurisdiction of the Premises, but only insofar as compliance shall pertain to the conduct of tenants medical facility business. It shall be the responsibility of the Landlord, at Landlord's expense, to ensure that the Premises, the Building, and any use, repairs, alterations, changes or additions to the Premises or the Building comply with all applicable laws, regulations, ordinances and rules, including but not limited to the Americans with Disabilities Act and the accessibility guidelines issued there under. In the event Landlord fails to make sure alterations within sixty (60) days of the commencement of the Lease, Tenant shall have the option to make such altercations and deduct the expense of such alterations and deduct the expense of such alterations from the rent under the lease.

7. **EXCLUSIVITY.** It is hereby understood and agreed that laboratories maintained by physicians tenants incidental to their practice, e.g. medicine or dentistry, are permissible to the extent that they provide laboratory services solely for their own patients. Landlord agrees to and shall undertake all appropriate and necessary measures to enforce this provision. Landlord agrees to and shall undertake all appropriate and necessary measures to enforce this provision.

8. **NO PYHSICIAN INTEREST.** *Intentionally Deleted.*

9. **CHANGE IN LAW OR REGULATION.** Notwithstanding anything in this Lease to the contrary, should legal counsel for Landlord or Tenant reasonably conclude that this Lease or Tenant's use of the Premises is or may be in violation of any law regulation, or subsequent changes in any applicable law

or regulation, this Lease shall terminate upon a thirty (30) day notice to the other party unless within said thirty day period the parties agree to such modifications in the Lease or use of the Premises that may be necessary to establish compliance with such law or regulation.

10. **UTILITIES AND OTHER SERVICES**. Landlord shall provide the Premises with reasonable janitorial and general cleaning services (Monday through Friday, exclusive of holidays), to all common areas. The Tenant shall be responsible for payment of all utilities (including a water usage charge as stated in paragraph 12), janitorial and general cleaning services for their respective rental area. Further, Tenant shall be responsible for all maintenance for their respective rental area other than structural damage not caused or created by the Tenant.

11. **ADDITIONAL RENT. There shall be a $40.00 per month water usage charge assessed to each tenant, which represents each tenant's share of the water usage cost based upon a single metered system. The landlord shall make a single monthly payment to Harvest-Monrovia Water Authority on behalf of all tenants based upon the single metered system.**

12. **MAINTENANCE AND REPAIRS**.

    (a) Landlord, at its cost, shall maintain in good condition (I) the structural portions of the Building and the Premises, including without limitation the foundations, load-bearing exterior walls, sub-flooring and roof;(ii) the electrical, plumbing, and sewage systems; (iii) window frames, gutter, and down-spouts on the Building; and (iv) HVAC systems servicing the Premises.

    (b) Landlord shall repair the Premises if the Premises is damaged by (I) causes over which Tenant has no control, (ii) acts or omissions of Landlord, or its agents, employees, or contractors, or (iii) Landlord's failure to perform its obligations under this paragraph.

    (c) Tenant shall repair the interior of the Premises, partitions, and glass damaged due to the neglect of Tenant, its agents or employees.

13. **INSPECTIONS, ACCESS.** Landlord, without abatement of rent and without being deemed guilty of an eviction of the Tenant, may with reasonable prior notice, enter the Premises at a reasonable hours to make repairs required of Landlord; to make repairs, alterations or additions to adjoining space which Landlord shall reasonably deem necessary; and to take upon the Premises all materials that by be required. Further, Landlord may with reasonable prior written notice, enter the Premises at reasonable hours to exhibit the same to Prospective purchasers or tenants. Notwithstanding the foregoing, Landlord shall not unreasonably interfere with Tenant's use and possession of the Premises.

14. **ALTERATIONS AND IMPROVEMENTS; SIGNS.** Tenant shall not make alterations in or additions to the Premises without first obtaining the Landlord's written consent, which shall not be unreasonably withheld or delayed. All erections, additions, fixtures and improvements, except the movable furniture and partitions of the Tenant, made in or upon the Premises, either by the Tenant or the Landlord, shall be the Landlord's property and shall remain upon the Premises at termination, by lapse of time or otherwise, without compensation to the Tenant. Any mechanics liens or other liens

placed on the Premises as a result of any Tenant alterations made pursuant to this paragraph shall be promptly discharged by Tenant unless Tenant is contesting such lien in good faith and Tenant has made appropriate reservations therefore. Tenant may erect appropriate signage in accordance with the reasonable rules and regulations of Landlord.

15. **TENANT'S PROPERTY.** All property placed on the Premises (by, at the direction of, or with the consent of Tenant, its employee, agents, licensees or invitees) shall be at the risk of Tenant or the owner thereof, and Landlord shall not be liable for any loss of or damage to said property resulting from any cause whatsoever unless such loss or damage is the result to the result of negligent or willful acts or omissions of Landlord, its agents, employees, or contractors.

16. **INSURANCE.** Throughout the Initial Term of this Lease and any exercised Renewal Term, Landlord shall carry fire and extended coverage insurance insuring its interest in the Building and the Premises at full replacement value. Tenant shall be responsible for fire and extended coverage insurance or provide evidence of adequate financial resources sufficient to insure against any liability of Tenant and its authorized representatives arising out of and in connection with Tenant's use or occupancy of the Premises up to One Million Dollars ($1,000,000) on account of bodily injuries to or death of one (1) person, and One Million Dollars ($1,000,000) on account of bodily injuries to or death of more than one (1) person as the result of any one (1) accident or disaster and Five Hundred Thousand Dollars ($500.00) on account of damage to property.

17. **FIRE OR OTHER CASALTY.** Tenant shall give immediate notice to Landlord of partial damage to the Premises by fire or other casualty. Landlord shall cause the damage to be repaired with reasonable speed. Rent shall be proportionately reduces to the extent, and for the duration, that the Premises are rendered not tenantable. If the Premises are destroyed or so damaged that in a normal course the Premises cannot be made tenantable within sixty (60) days, or if the damage occurs during the last ninety (90) days of the Term and Tenant had not exercised any option to renew, wither Landlord or Tenant may terminate this Lease immediately upon written notice to the other. Rental shall be adjusted as of the date of the damage, and Tenant shall vacate the Premises within twenty (20) days from the notice of termination.

18. **CONDEMNATION.** If the whole or any part if the Premises shall be taken or condemned for the remainder of the Term by any competent authority for any public or quasi public use or purpose suck as to render the Premises unsuitable for Tenant's use, in Tenant's discretion, then the Term shall terminate from the date title is acquired by the condemning authority, and rentals shall be apportioned accordingly. The condemnation award shall be paid to the Landlord and Tenant as their interests shall appear in accordance with applicable law. If the whole or any part of the Premises shall be taken or condemned for a period ending prior to the expiration of the Term, Tenant shall be entitled to the entire condemnation award or other compensation for the taking, but rent shall not abate.

19. **QUIET ENJOYMENT.** Landlord agrees that Tenant shall quickly have, hold and enjoy the Premises for the term as herein stated, so long as Tenant is not in default.

20. **NOTICES.** Any notice of demand which by any provision of this Lease is required or permitted to be given by either party shall be deemed to have been sufficiently given for all purposed when made in

writing and hand-delivered or send in the United States mail as certified or registered mail, return receipt requested, postage prepaid, and addressed as follows:

If to Landlord:       Monrovia Investment Group, LLC
                      1892 Jeff Road
                      Huntsville, Al  35806
                      Attention: Marty Walker

If to Tenant:         Allman Family Medicine PC
                      1878 Jeff Road Suite G
                      Huntsville, Alabama 35806
                      *Attention: Jason Allman*

Notice shall be deemed to have been given upon the date of delivery if hand-delivered, or if mailed by certified or registered mail, upon the earlier of the date appearing upon the return receipt or three (3) days after mailing.

21. **TENANT'S DEFAULT**. The occurrence of one (1) or more of the following events ( an "Event of Default") shall constitute default by the tenant;

    (a)  The rental payments are not paid at the time and place dues are provided herein. Landlord shall give Tenant ten (10) days written notice of Landlord's intent to declare Tenant in default hereunder, and Tenant shall have the right to cure such default within ten (10) days from receipt of the notice; or,
    (b)  Tenant fails to comply in any material respect with any term, provision, condition, or covenant of this Lease (other than the payment of rent), and does not cure such failure within thirty (30) days after written notice by Landlord specifying suck default.

22. **LANDLORDS'S REMEDIES UPON DEFAULT BY TENANT**. Landlord shall have the following remedies if Tenant commits and Event of Default. There remedies are not exclusive; they are cumulative and in addition to any remedies now or later allowed by law.

    (a) Landlord shall have the right to terminate this Lease and Tenant's rights to possession of the Premises at any time without notice, re-enter the Premises, pursue its remedies or in equity   to recover from Tenant all amount of rent due or thereafter accruing, and pursue such other damages are caused by Tenant's default.

    (b) No course of dealing between Landlord and Tenant or any delay in exercising any rights that either party may or my have under the Lease shall operate as a waiver of any of the rights hereunder, nor shall any waiver of a prior default operate was a waiver of any subsequent default or defaults and not   express waiver shall affect any condition, covenant, rule or regulation other than the one specified in such waiver and that one only for the time and in the manner specifically

stated.

**MITIGATION.** In the event Landlord shall terminate this Lease or otherwise take possession of the Premises due to default by Tenant, Landlord shall make ever reasonable effort to reduce the serve to reduce the amount due from Tenant.

23. **LANDLORD'S DEFAULT; TENANT'S REMEDIES.** In the event that Landlord fails to observe or performed by Landlord under the terms of this Lease , and Landlord fails to cure such breach within thirty (30) days after written notice thereof from Tenant, Landlord shall be deemed in default. Upon Landlord's default, Tenant at its remedies it may have at law or in equity;

   (a) Tenant may cure the default by performing Landlord's obligation, in which case Landlord shall reimburse Tenant for all costs and expenses incurred by Tenant within thirty (30) days after the date of invoice;

   (b) Tenant may terminate this Lease immediately upon written notice to Landlord;

   ( c) Tenant my recover all damages and expenses (including reasonable attorney's fees) incurred by Tenant as a result of Landlord's default; and

   (d) Tenant may seek equitable relief including, but not limited to, specific performance.

24. LANDLORD'S **REPRESENTATIONS AND WARRANTIES.** Landlord represents and warrants that as of the Commencement Date of this Lease:

   (a) Landlord owns the Building and the Premises in fee simple subject only to this Lease and to easements, encumbrances and restrictions of record and such other lease as may exist for space outside of the Premises;

   (b) Landlord has full right, authority and power to enter into this Lease and to perform its obligations under this Lease; that each person signing this Lease on behalf of Landlord is authorized to do so and that is Lease is binding upon Landlord in accordance with its terms:

   (c)   The Premises, the Building, and the property of which it is a part are in compliance with Hazardous Material Law and are free of Hazardous Materials. Notwithstanding any provision in this Lease to the contrary, in no event shall Tenant be liable for the violation of any Hazardous Materials Laws or the presence of any Hazardous Material on, under, or about the Premises, the Building, or the property of which it is a part occurring or existing prior to the Commencement Date of this Lease, and Landlord shall be solely liable for any monitoring, investigation, clean-up, removal and other remedial work required as a result thereof. "Hazardous Materials" means any chemical, compound, material, substance or other matter that; (I) is a flammable explosive, asbestos, radioactive materials,   nuclear medicine material, drug, vaccine, bacteria, virus, hazardous waste, toxic substance, petroleum product, or related injurious or potentially injurious material, whether injurious or potentially injurious by itself or in combination with other materials; (ii) is controlled, designed in or governed by any Hazardous Materials Law; (iii) givers rise to any liability, responsibility or duty on the part oh Tenant or Landlord with respect to any third person under any applicable law. "Hazardous Materials Law" means any applicable law governing the use, storage, release, or transportation of Hazardous Materials.

Landlord shall protect, indemnify, defend and hold Tenant harmless for, from and against any and all claims, cost, expenses, suits, judgments, actions, investigations, proceedings and liabilities arising out of or in connection with any breach of any of Landlord's obligations herein or the inaccuracy of any warranty or representation herein.

25. **SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT.** This Lease shall automatically be subordinate to the lien or encumbrance of any ground lease, mortgage or deed of trust heretofore or hereafter placed upon of affection the Premises, and to any and all renewals, replacements, modifications and extensions thereof to the extent that such renewals, replacements, modifications and extensions thereof do not materially affect Tenant's rights and obligations under this Lease. In the event of foreclosure, exercise of power of sale, or transfer in lieu of foreclosure under any such instrument, Tenant shall attorn to the ground lessor, mortgagee, or purchaser upon foreclosure or other sale, or other successor in ownership to the Premises as Landlord under the Lease, provided that as a condition to any subordination or attornment hereunder, Tenant's rights under this Lease shall continue and not be terminated or disturbed so long as Tenant is not in default. Tenant agrees to execute any document reasonably requested by Landlord to evidence the subordination, non-disturbance and attornment provisions of this Lease.

26. **ESTOPPEL CERTIFICATES.** Tenant shall, within twenty (20) calendar days following any written request from Landlord during the term of this Lease, execute, acknowledge and deliver to Landlord a written statement executed by Tenant and certifying to the best of Tenant's knowledge:

    (a) Whether the Lease is in full force and effect, and stating the nature of any modification thereto;
    (b) The dates to which Rent and other charges have been paid in advance, if any, and the amount thereof;
    (c) The amount of any security deposit paid by Tenant;
    (d) Whether there are any defaults on the part of Landlord hereunder, and specifying suck default if claimed; and
    (e) The status of such other matters as may reasonably be requested by the Landlord.

27. **INDEMNIFICATION OF LANDLORD.** In the absence of any negligent or intentional act or omission by Landlord, its employees, agents, representatives, contractors or invitees of Landlord. tenant agrees to indemnify an defend Landlord and to save harmless Landlord, and the licensees, invitees, agents, servants and employees of Landlord against and from claims by or on behalf of any person, firm or corporation, arising by reason of injury to person or property occurring on the Premises, to the extent occasioned by a negligent or intentional act or omission on the part of Tenant. Tenant agrees to pay Landlord promptly for damage to the Premises caused by Tenant and for damage due to neglect of the Premises by Tenant or neglect by Tenant of its equipment, apparatus and appurtenances of which Tenant is obligated to serve hereunder.

28. **SUCCESSORS AND ASSIGNS.** The provisions of this Lease shall bind and inure to the benefit of Landlord and Tenant, and their respective successors, heirs, legal representatives and assigns.

29. **MUTUAL WAIVER OF SUBROGATION.** For the purpose of Waiver of Subrogation, the

parties mutually release and waive unto the other, all rights to claim damages, cost or expenses for any injuries to persons (including death) or property caused by casualty of any type whatsoever in or about the premises, if the amount of such damages, cost or expense has been paid to such party under the terms of any policy of insurance. All insurance policies carried with respect to this Lease, if permitted under applicable law, shall contain a provision whereby the insurer waives, prior to loss, all rights of subrogation against either Landlord or Tenant.

30. **LEASE AGREEMENT.** This Lease constitutes the entire understanding between the parties hereto. No changes, amendments, representations or agreements will be effective unless they are in writing and signed by authorized representatives of both parties. The terms and conditions of the Lease shall supersede all previous agreements, oral or otherwise.

31. **ATTORNEY'S FEES.** Tenant agrees to pay a reasonable attorney's fee and all costs if it becomes necessary for Landlord to employ an attorney to collect any of the rent agreed to be paid or to enforce performance of any of the provisions of this lease or to obtain possession of the leased premises or otherwise to exercise any option or enforce any right given to Landlord upon default by Tenant or any term, condition, stipulation or obligation of the lease, and Tenant expressly waives all exemptions secured to Tenant under the laws of the State of Alabama or any State in the United States as against the collection of any debt incurred or secured.

**IN WITNESS WHEREOF**, the parties hereto have caused this Lease to be executed in their respective names, as their official acts, by their duly authorized representatives, effective as of the day and year first above written.

Allman Family Medicine, PC. ("TENANT")

BY: _____

TITLE: _____Owner_____

WITNESS: _____

MONROVIA INVESTMENT GROUP, LLC ("LANDLORD")

BY: _____

TITLE: _____Partner_____

WITNESS: _____