# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re:

                                               Case #: 18-83207-CRJ11

PRIMARY PROVIDERS OF ALABAMA, INC.

EIN: XX-XXX9960                                    CHAPTER 11

     DEBTOR.

## MOTION FOR EXAMINATION PURSUANT TO RULE 2004

COMES NOW, BancorpSouth Bank, a corporation, ("Movant"), by and through counsel, and hereby moves for authority to examine Primary Providers of Alabama, Inc. ("Debtor") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, on the following grounds:

1. The above-styled Debtor filed a Chapter 11 Petition in the above-styled District and Division on 10/26/18.

2. On 11/04/16, Debtor, fdba Allman Family Medicine, P.C., executed a promissory note ("Note 1") to Movant and a Security Agreement Addendum ("SA Addendum 1") contemporaneously therewith granting a security interest in "All Business Assets" and a first mortgage on 3.37 acres located at 1878 Jeff Road NW #G, Huntsville, AL 35806. A copy Note 1 and of the SA Addendum 1 are attached hereto as "Exhibit A" and "Exhibit B," respectively, and incorporated herein by reference. Debtor also executed contemporaneously with Note 1 a Commercial Security Agreement ("CSA 1") granting therein a security interest to Movant in "Equipment" and "All Business Assets." A copy of CSA 1 is attached hereto as "Exhibit C" and incorporated herein by reference.

3. Additionally, on 11/04/16, Debtor, fdba Allman Family Medicine, P.C., executed a second promissory note ("Note 2") to Movant and a Security Agreement Addendum ("SA Addendum 2") therewith granting a security interest in "Accounts Receivable." A copy Note 2 and of the SA Addendum 2 are attached hereto as "Exhibit D" and "Exhibit E," respectively. Debtor also executed contemporaneously with Note 2 a Commercial Security Agreement ("CSA 2") granting therein a security interest to Movant in "Account Receivable" and "Accounts and other Rights of Payment" ("Account Collateral"). A copy of CSA 2 is attached hereto as "Exhibit F" and incorporated herein by reference.

4. On 11/07/16, Movant filed with the Alabama Secretary of State a UCC-1 Financing Statements, Statement #: 16-7505939 ("FS 1") and Statement #: 16-7505608 ("FS 2") thereby properly perfecting Movant's interest in all business assets, accounts receivables, and all equipment of the Debtor, whether then owned or acquired thereafter. A copy of FS 1 and FS

2 are attached hereto as "Exhibit G" and "Exhibit H," respectively, and incorporated herein by reference.

5. On 06/01/18, Debtor, fdba Allman Family Medicine, P.C., executed a renewal promissory note ("Note 3") to Movant and a Security Agreement Addendum ("SA Addendum 3") therewith granting a security interest in "Accounts Receivable." A copy Note 3 and of the SA Addendum 2 are attached hereto as "Exhibit I" and "Exhibit J," respectively. Debtor also executed contemporaneously with Note 3 a Commercial Security Agreement ("CSA 3") granting therein a security interest to Movant in "Account Receivable" and "Accounts and other Rights of Payment" ("Account Collateral"). A copy of CSA 3 is attached hereto as "Exhibit K" and incorporated herein by reference.

6. On 11/27/18, the 341 Meeting of Creditors was held and counsel for Movant did attend. At the 341 Meeting, the Debtor disclosed that it had a previous business location in which the landlord was awaiting possession and that the location had business equipment still in the commercial space.

7. On 12/06/18, West Madison Professional Plaza, LLC filed a motion for stay relief to obtain possession of a commercial space the Debtor had used as a business location prior to the filing of this bankruptcy.

8. After some investigation regarding the equipment and upon information and belief, the Debtor sold equipment that was at the old business location through an auction held by Fowler Auction & Real Estate Services, Inc. approximately one (1) week prior to filing of the instant Chapter 11 bankruptcy matter. Attached as "Exhibit L" and incorporated herein is a screenshot of the equipment that is believed to have been the Debtor's and the Collateral to which Movant has a perfected security interest.

9. Further, upon information and belief, additional equipment may have been sold to private parties and additional equipment may be stored at an unknown storage facility.

10. Movants request a 2004 Examination in order to obtain additional information about the Debtor's assets and liabilities, to better understand the condition and location of its Collateral, to further explore the details surrounding the sale and/or gifting of their Collateral, if any, and to determine any other information relevant to the administration of the Debtor's estate.

**WHEREFORE, PREMISES CONSIDERED**, Movants respectfully request this Court to enter an Order:

A. Directing the Debtor to submit to an examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure by Movants, through their undersigned counsel, on the date set for soonest 341 docket and located at the address for said docket.

B. Directing Debtor's to produce for inspection and copying by Movants all of the documents described in the attached "Exhibit M."

C.  Granting Movant such other and further relief as is just and proper.


Dated this the 11th day of January, 2019.


/s/ James C. Cameron
James C. Cameron (ASB-9443-5LP9)
JONES, & CAMERON, LLC
Attorney for Movant
P. O. Box 940
Guntersville, AL  35976
(256) 582-0588


**CERTIFICATE OF SERVICE**


I hereby certify that I have served a copy of the foregoing, in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004, by first class mail postage prepaid or via Notice of Electronic Filing through the Court's CM/ECF Noticing System to the following parties:

Primary Providers of Alabama (fdba, Allman Family Medicine, P.C.)
1861 Shellbrook Drive
Huntsville, AL 35806

Tazewell Shepard                                      Tazewell Taylor Shepard, IV
taze@ssmattorneys.com                          ty@ssmattorneys.com
cheryl@ssmattorneys.com
janelle@ssmattorneys.com

Richard M Blythe, Bankruptcy Administrator
Richard_Blythe@alnba.uscourts.gov
courtmaildec@alnba.uscourts.gov

This 11th day of January, 2019.

   /s/ James C. Cameron
James C. Cameron

(38400)

# EXHIBIT A

| | | |
|---|---|---|
| ALLMAN FAMILY MEDICINE PC . <br> HUNTSVILLE, AL 35806 | BANCORPSOUTH BANK <br> 401 FRANKLIN STREET <br> HUNTSVILLE, AL 35801 | Loan Number ████2246 <br> Date 11/04/2016 <br> Maturity Date 11/04/2021 <br> Loan Amount $ $100,000.00 <br> Renewal Of N/A |

JB

**BORROWER'S NAME AND ADDRESS** <br> "I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS** <br> "You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of ONE HUNDRED THOUSAND DOLLARS AND 00 CENTS _____ Dollars $ $100,000.00

☒ **Single Advance:** I will receive all of this principal sum on _____ 11/04/2016 _____ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
N/A _____ I will receive the amount of $ N/A _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are N/A

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ N/A _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 11/04/2016 _____ at the rate of 4.000 %
per year until paid in full _____ .

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be N/A _____ the following index rate:
N/A

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as N/A
A change in the interest rate will take effect N/A

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than N/A % or less than _____ N/A %. The rate may not change more than _____ % each N/A

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change. ☐ The amount of the final payment will change.
☐ N/A

**ACCRUAL METHOD:** Interest will be calculated on a actual/360 day _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____ .

☒ **LATE CHARGE:** If a payment is made more than 10 _____ days after it is due, I agree to pay a late charge of _____
5% of the unpaid amount

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: N/A

**PAYMENTS:** I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest N/A

☐ **Principal:** I agree to pay the principal N/A

☒ **Installments:** I agree to pay this note in 60 _____ payments. The first payment will be in the amount of $ $1,844.10
and will be due 12/04/2016 _____ . A payment of $ $1,844.10 _____ will be due
4 TH of each MONTH _____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due _____ 11/04/2021 _____ .

**ADDITIONAL TERMS: SECURITY:**
REFER TO ATTACHED SECURITY AGREEMENT ADDENDUM.

||||| ||█████████████████████████████|| |||||

| |
|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date): <br> SEC AGRMT DATED 11/04/2016 <br> MTG DATED 11/04/2016 <br> (This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) |
| **DISPOSITION OF FUNDS** |
| Deposited to Account Number _____ Check Number _____ |

Signature for Lender _____ Officer # 27134

J BLt

**PURPOSE:** The purpose of this loan is Purchase -
Collateral Pledged - Not for RE (and Refinance)

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

ALLMAN FAMILY MEDICINE PC
BY KATARINA ALLMAN, M.D., PRESIDENT

UNIVERSAL NOTE
Experē® © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 2/1/2013
QFS v 8.5 10/03/2016 A00B4A0040

(page 1 of 2)

**DEFINITIONS:** As used on page 1, "⊠ " means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization BANCORPSOUTH BANK

NMLS ID 410270

Loan originator

NMLS ID

Exp̲er̲e̲s̲® © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 2/1/2013

_K A_

(page 2 of 2)

**Lender**

BANCORPSOUTH BANK
401 FRANKLIN STREET
HUNTSVILLE, AL 35801

**Borrower**
ALLMAN FAMILY MEDICINE PC
▬▬▬▬▬▬▬▬▬
HUNTSVILLE, AL 35806

| | |
|---|---|
| Loan Number | ████2246 |
| Loan Date | 11/04/2016 |
| Maturity Date | 11/04/2021 |
| Loan Amount | $100,000.00 |

This Security Agreement Addendum is made a part of the note evidencing the above referenced loan.

**Security**

1ST MTG LOT
3.37 ACRE(S) LOCATED AT:
119 BISHOP BEND DRIVE
HUNTSVILLE , MADISON COUNTY , AL 35806

ALL BUSINESS ASSETS
████████████
HUNTSVILLE AL 358060000

**EXHIBIT B**

AND GUARANTEED BY KATARINA ALLMAN MD
AND GUARANTEED BY JASON ALLMAN

**Signatures**

I agree that the above described property shall be security for the above-reference loan to the same extent as if the property were fully set forth in the note. I also acknowledge receipt of a copy of this Security Agreement Addendum on the date set forth above as the Loan Date.

X_____(Seal)     X_____(Seal)
ALLMAN FAMILY MEDICINE PC
BY KATARINA ALLMAN, M.D., PRESIDENT

X_____(Seal)     X_____(Seal)

X_____(Seal)     X_____(Seal)

X_____(Seal)     X_____(Seal)

X_____(Seal)     X_____(Seal)

coladdnc.pg1
GFS v 8.5 10/03/2016 A00B4A0040

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| ALLMAN FAMILY MEDICINE PC<br><br>HUNTSVILLE AL 35806 | BANCORPSOUTH BANK<br>401 FRANKLIN STREET<br>HUNTSVILLE, AL 35801 |

# EXHIBIT C

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration(if applicable)  AL
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is _____ **NOVEMBER 04, 2016**

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☐ Debtor ☒ **ALLMAN FAMILY MEDICINE PC** _____

(Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):
ALL BUSINESS ASSETS
HUNTSVILLE AL 35806-0000

This financing statement covers the above collateral, whether now owned or hereafter acquired, together with all supporting obligations,
proceeds, products, software, accessories and accessions, including, but not limited to the items listed.
The inclusion of proceeds does not authorize debtor to sell or trade the above described property.
This financing statement covers and this collateral secures all future advances.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| ALLMAN FAMILY MEDICINE PC | BANCORPSOUTH BANK |
| By: _____ | By: _____ |
| KATARINA ALLMAN, M.D., PRESIDENT | |

Experi® © 2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-BUS 7/24/2001
QFS v 8.5 10/03/2016  A0084A0040

(page 1 of 2)

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:
(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;
(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;
(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and
(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

_K.A._

(page 2 of 2)

Experts™ ©2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

# EXHIBIT D

| ALLMAN FAMILY MEDICINE PC<br>▓▓▓▓▓▓▓▓▓▓<br>HUNTSVILLE, AL 35806<br><br>JB | BANCORPSOUTH BANK<br>401 FRANKLIN STREET<br>HUNTSVILLE, AL 35801 | Loan Number ▓▓▓▓▓2118<br>Date 11/04/2016<br>Maturity Date 12/01/2017<br>Loan Amount $ $350,000.00<br>Renewal Of N/A |
|---|---|---|
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of THREE HUNDRED FIFTY THOUSAND
DOLLARS AND 00 CENTS _____ Dollars $ 350,000.00 _____

☐ **Single Advance:** I will receive all of this principal sum on _____ N/A _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On
_____ 11/04/2016 _____ I will receive the amount of $ N/A _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are per customer request and officer approval _____

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____ 12/01/2017 _____
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 11/04/2016 _____ at the rate of _____ 4.500 _____ %
per year until _____ 11/04/2016 _____

☒ **Variable Rate:** This rate may then change as stated below.
  ☒ **Index Rate:** The future rate will be 1.000% ABOVE _____ the following index rate:
  Prime Rate as published in the money rates section of the Wall Street Journal _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☒ **Frequency and Timing:** The rate on this note may change as often as every day _____
    A change in the interest rate will take effect _____ daily _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ N/A _____ % or less than
    _____ N/A _____ %. The rate may not change more than _____ N/A _____ % each _____ N/A _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.
  ☐ _____ N/A _____

**ACCRUAL METHOD:** Interest will be calculated on a actual/360 day _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than _____ 10 _____ days after it is due, I agree to pay a late charge of _____
5% of the unpaid amount _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount
above: N/A _____

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest in installments _____
  Monthly Payments first due on 12/01/2016 _____
☒ **Principal:** I agree to pay the principal on DECEMBER 01, 2017 _____

☐ **Installments:** I agree to pay this note in N/A _____ payments. The first payment will be in the amount of $ N/A _____
  and will be due _____ N/A _____. A payment of $ N/A _____ will be due
  N/A _____ thereafter. The final payment of the entire
  unpaid balance of principal and interest will be due _____ N/A _____

**ADDITIONAL TERMS: SECURITY:**
REFER TO ATTACHED SECURITY AGREEMENT ADDENDUM.

▌▌▌▐▌▌▐▐▐▌▐▐▐▌▐▌▐▐▐▌▐▐▌▐▐▌▐▌▐▐▌▌▌

| ☒ **SECURITY:** This note is separately secured by (describe separate<br>document by type and date):<br>SEC AGRMT DATED 11/04/2016<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the<br>agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is Working Capital/Business<br>Expense (and Refinance) _____<br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING<br>THOSE ON PAGE 2).** I have received a copy on today's date.<br><br>CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS<br>CONTRACT BEFORE YOU SIGN IT. |
|---|---|
| **DISPOSITION OF FUNDS** | _____<br>ALLMAN FAMILY MEDICINE PC<br>BY KATARINA ALLMAN, M.D., PRESIDENT |
| Deposited to Account Number _____ Check Number _____ | |
| Signature for Lender _____ Officer # 27134 | _____ |
| _____ | _____ |

UNIVERSAL NOTE
Experti® ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 2/11/2013
QFS v8.5 10/03/2016 A008481124

(page 1 of 2)

Case 18-83207-CRJ11    Doc 60    Filed 01/11/19    Entered 01/11/19 08:47:51    Desc Main
Document    Page 9 of 29

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization  BANCORPSOUTH BANK

NMLS ID  410279

Loan originator

NMLS ID

X A

Experⓔ ©1991, 1997 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL  2/1/2013

Case 18-83207-CRJ11    Doc 60    Filed 01/11/19    Entered 01/11/19 08:47:51    Desc Main
Document    Page 10 of 29

## Security Agreement Addendum

**Lender**

BANCORPSOUTH BANK
401 FRANKLIN STREET
HUNTSVILLE, AL 35801

**Borrower**

ALLMAN FAMILY MEDICINE PC
██████████████
HUNTSVILLE, AL 35806

| | |
|---|---|
| Loan Number | ████████ 2118 |
| Loan Date | 11/04/2016 |
| Maturity Date | 12/01/2017 |
| Loan Amount | $350,000.00 |

This Security Agreement Addendum is made a part of the note evidencing the above referenced loan.

### Security

ACCOUNTS RECEIVABLE
████████████████

HUNTSVILLE AL 358060000

# EXHIBIT E

AND GUARANTEED BY KATARINA ALLMAN MD
AND GUARANTEED BY JASON ALLMAN

### Signatures

I agree that the above described property shall be security for the above-reference loan to the same extent as if the property were fully set forth in the note. I also acknowledge receipt of a copy of this Security Agreement Addendum on the date set forth above as the Loan Date.

X _____ (Seal)      X _____ (Seal)
ALLMAN FAMILY MEDICINE PC
BY KATARINA ALLMAN, M.D., PRESIDENT

X _____ (Seal)      X _____ (Seal)

X _____ (Seal)      X _____ (Seal)

X _____ (Seal)      X _____ (Seal)

X _____ (Seal)      X _____ (Seal)

coladdnc.pg1

DFS v 8.5 10/03/2016 A00B4B4134

L20160915D00938GM01SECADDEN

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| ALLMAN FAMILY MEDICINE PC <br> ████████████████ <br> HUNTSVILLE AL 35806 | BANCORPSOUTH BANK <br> 401 FRANKLIN STREET <br> HUNTSVILLE, AL 35801 |

# EXHIBIT F

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) __AL__
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is _____JUNE 01, 2018_____

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☐ Debtor ☒ __ALLMAN FAMILY MEDICINE PC__
(Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited to, the following (if required, provide real estate description):
__ACCOUNTS RECEIVABLE__ ████████████████
HUNTSVILLE AL 35806-0000

This financing statement covers the above collateral, whether now owned or hereafter acquired, together with all supporting obligations, proceeds, products, software accessories and accessions, including, but not limited to the items listed.
The inclusion of proceeds does not authorize debtor to sell or trade in above described property.
This financing statement covers all this collateral secures all future advances.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| ALLMAN FAMILY MEDICINE PC | BANCORPSOUTH BANK |
| By: _(signature)_ | By: _(signature)_ |
| KATARINA ALLMAN, M.D., PRESIDENT | |

Experts ©2006 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The terms and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party if Secured Party requests. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. This insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

Exp̅e̅r̅e̅t̅i̅™  ©2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-BUS  7/24/2001

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CONNIE BREWER                                256-564-8464

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

BANCORPSOUTH

401 FRANKLIN STREET

HUNTSVILLE,, AL 35801
USA

Alabama
Sec. Of State
B 16-7505939 FS
Date 11/07/2016
Time 02:22 PM
161107        1 Pg

File        $15.00
Access       $9.75
Conv         $4.50
-----------------
Total       $29.25

7508462

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** ALLMAN FAMILY MEDICINE PC | | | | |
| **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **1c. MAILING ADDRESS** 1878 JEFF ROAD NW #G | **CITY** HUNTSVILLE | **STATE** AL | **POSTAL CODE** 35806 | **COUNTRY** USA |
| **ADD'L INFO RE ORGANIZATION DEBTOR** | **1e. TYPE OF ORGANIZATION** | **1f. JURISDICTION OF ORGANIZATION** AL | **1g. ORGANIZATIONAL ID #, if any** | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | |
| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| **ADD'L INFO RE ORGANIZATION DEBTOR** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID #, if any** | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** BANCORPSOUTH | | | | |
| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **3c. MAILING ADDRESS** 401 FRANKLIN STREET | **CITY** HUNTSVILLE, | **STATE** AL | **POSTAL CODE** 35801 | **COUNTRY** USA |

**4. This FINANCING STATEMENT covers the following collateral:**                                    ☐ ATTACHMENT

ALL BUSINESS ASSETS
This financing statement covers the above collateral, whether now owned or hereafter acquired, together with all supporting obligations, proceeds, products, software, accessories and accessions, including, but not limited to the items listed.
THE INCLUSION OF PROCEEDS DOES NOT AUTHORIZE DEBTOR TO SELL OR TRADE THE ABOVE DESCRIBED PROPERTY.
THIS FINANCING STATEMENT COVERS AND THIS COLLATERAL SECURES ALL FUTURE ADVANCES.

**5. ALTERNATIVE DESIGNATION** (if applicable): ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum   **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
2118 AND ▮▮▮▮2246

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CONNIE BREWER                                    256-564-8464

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

```
BANCORPSOUTH

  401 FRANKLIN STREET

  HUNTSVILLE,, AL 35801
  USA
```

Alabama
Sec. Of State

16-7505608 FS
Date 11/07/2016
Time 11:46 AM
161107      1 Pg

File      $15.00
Access     $9.75
Conv       $4.50
         --------
Total     $29.25

7508376

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ALLMAN FAMILY MEDICINE PC | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1878 JEFF ROAD NW #G | HUNTSVILLE | AL | 35806 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION AL | 1g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BANCORPSOUTH | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 401 FRANKLIN STREET | HUNTSVILLE, | AL | 35801 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**     □ ATTACHMENT

ALL ACCOUNTS RECEIVABLE AND EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED.

THIS FINANCING STATEMENT COVERS THE ABOVE COLLATERAL, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUPPORTING OBLIGATIONS, PROCEEDS, PRODUCTS, SOFTWARE, ACCESSORIES AND ACCESSIONS, INCLUDING BUT NOT LIMITED TO THE ITEMS LISTED.

THE INCLUSION OF PROCEEDS DOES NOT AUTHORIZE DEBTOR TO SELL OR TRADE THE ABOVE DESCRIBED PROPERTY.

THIS FINANCING STATEMENT COVERS AND THIS COLLATERAL SECURES ALL FUTURE ADVANCES.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | □ LESSEE/LESSOR | □ CONSIGNEE/CONSIGNOR | □ BAILEE/BAILOR | □ SELLER/BUYER | □ AG. LIEN | □ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | □ All Debtors | □ Debtor 1 | □ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
▮▮▮▮▮2118 AND▮▮▮▮▮2246

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# EXHIBIT I

| | | |
|---|---|---|
| ALLMAN FAMILY MEDICINE PC<br><br>HUNTSVILLE, AL 35806 | BANCORPSOUTH BANK<br>401 FRANKLIN STREET<br>HUNTSVILLE, AL 35801 | Loan Number ▮▮▮2118<br>Date    6/01/2018<br>Maturity Date   9/14/2018<br>Loan Amount $ $329,074.60<br>Renewal Of ▮▮▮2118 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of THREE HUNDRED TWENTY NINE THOUSAND SEVENTY FOUR DOLLARS AND 60 CENTS    Dollars $ $329,074.60

☐ **Single Advance:** I will receive all of this principal sum on _____ N/A _____ . No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
   6/01/2018 _____ I will receive the amount of $ $329,074.60 _____ and future principal advances are contemplated.
   **Conditions:** The conditions for future advances are per customer request and officer approval

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
   all other conditions and expires on   9/14/2018 .

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 6/01/2018 _____ at the rate of _____ 5.750 %
per year until   6/01/2018

☒ **Variable Rate:** This rate may change as stated below.
   ☒ **Index Rate:** The future rate will be 1.000% ABOVE _____ the following index rate: _____
   Prime Rate as published in the money rates section of the Wall Street Journal

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☒ **Frequency and Timing:** The rate on this note may change as often as every day _____
     A change in the interest rate will take effect   daily
   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ N/A or less than
     N/A %. The rate may not change more than _____ N/A % each N/A

   **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.
   ☐   N/A

**ACCRUAL METHOD:** Interest will be calculated on a actual/360 day _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than   10 _____ days after it is due, I agree to pay a late charge of _____
   5% of the unpaid amount

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount
   above:   N/A

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest in Installments
   Monthly Payments first due on 7/14/2018
☒ **Principal:** I agree to pay the principal on SEPTEMBER 14, 2018

☐ **Installments:** I agree to pay this note in N/A _____ payments. The first payment will be in the amount of $ N/A
   and will be due _____ N/A _____ . A payment of $ N/A _____ will be due _____
   N/A _____ thereafter. The final payment of the entire
   unpaid balance of principal and interest will be due _____ N/A _____ .

**ADDITIONAL TERMS: SECURITY:**
REFER TO ATTACHED SECURITY AGREEMENT ADDENDUM.

<br>

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>SEC AGRMT DATED 6/01/2018<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is Working Capital/Business Expense (and Refinance)<br><br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.**<br><br>CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT. |
| **DISPOSITION OF FUNDS** | ALLMAN FAMILY MEDICINE PC<br>BY KATARINA ALLMAN, M.D., PRESIDENT |
| Deposited to Account Number    Check Number | |
| Signature for Lender    Officer # 26796 | |

UNIVERSAL NOTE
Experȩ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 2/1/2013
QFS v 9.6 1 04/30/2018 A006BA2303

*(page 1 of 2)*

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to .pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other action to protect your right if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization BANCORPSOUTH BANK

NMLS ID 410279

Loan originator EDWIN HOFF

NMLS ID 1312499

*KA*

(page 2 of 2)

Experi⊗ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 2/1/2013

| Lender | Borrower | |
|---|---|---|

**Lender**
BANCORPSOUTH BANK
401 FRANKLIN STREET
HUNTSVILLE, AL 35801

**Borrower**
ALLMAN FAMILY MEDICINE PC
█████████████████
HUNTSVILLE, AL 35806

Loan Number _____ 2118
Loan Date ____ 06/01/2018
Maturity Date ____ 9/14/2018
Loan Amount ____ $329,074.60

This Security Agreement Addendum is made a part of the note evidencing the above referenced loan.

**Security**

ACCOUNTS RECEIVABLE
████████████████
HUNTSVILLE AL 358060000

AND GUARANTEED BY KATARINA ALLMAN MD
AND GUARANTEED BY JASON ALLMAN

# EXHIBIT J

**Signatures**

I agree that the above described property shall be security for the above-reference loan to the same extent as if the property were fully set forth in the note. I also acknowledge receipt of a copy of this Security Agreement Addendum on the date set forth above as the Loan Date.

X _____ (Seal)     X _____ (Seal)
ALLMAN FAMILY MEDICINE PC
BY KATARINA ALLMAN, M.D., PRESIDENT

X _____ (Seal)     X _____ (Seal)

X _____ (Seal)     X _____ (Seal)

X _____ (Seal)     X _____ (Seal)

X _____ (Seal)     X _____ (Seal)

coladdnc.pg1

QFS v 9.6.1 04/30/2018 A0068A2303

# EXHIBIT K

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| ALLMAN FAMILY MEDICINE PC | BANCORPSOUTH BANK |
| ~~HUNTSVILLE AL 35806~~ | 401 FRANKLIN STREET |
| | HUNTSVILLE, AL 35801 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) AL
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is _____ JUNE 01, 2018 _____

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts (check one) ☐ Debtor ☒ ALLMAN FAMILY MEDICINE PC

(Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

ACCOUNTS RECEIVABLE ~~~~~~~~~~~~
HUNTSVILLE AL 35806-0000

This financing statement covers the above collateral, whether now owned or hereafter acquired, together with all supporting obligations, proceeds, products, software, accessories and accessions, including, but not limited to the items listed.
The inclusion of proceeds does not authorize debtor to sell or lease the above described property
This financing statement covers and this collateral secures all future advances.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| ALLMAN FAMILY MEDICINE PC | BANCORPSOUTH BANK |
| By: _(signature)_ | By: _(signature)_ |
| KATARINA ALLMAN, M.D., PRESIDENT | |

Experï© © 2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-BUS 7/24/2001

OFS v 9.6.1 04/30/2018 A0068A2303

*(page 1 of 2)*

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

Exper̲y̲ © 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

EXHIBIT L

# 471 results found in 'All Categories'

**Search:**
[ Auctions ▾ ]

**Format:**
[ All ▾ ]

**Sort By:**
[ Recently Completed ▾ ]

**Category:**
[ All ▾ ]

[ Advanced Filters ]



### 3.5 Acre± Corner Lot To Be Offered In 2 Tracts:
On-site bidding
LIVE Auction Tuesday, November 13th
Fowler Auction & Real Estate Service, Inc.

View Auction



### Custom 3-Bedroom Home & 75.5 Acres± To Be Offered In 6 Tracts
On-site bidding
LIVE Auction Thursday, November 8th
Fowler Auction & Real Estate Service, Inc.

View Auction



### Heavy Equipment, Tool & Die, Power Tools and Rental Equipment Inventory at Absolute Online Auction
Online Only
Monday November 5th, 2018
Ford Brothers, Inc.

View Auction

View Catalog



LIVE & ONLINE Simulcast Saturday, November...
Fowler Auction & Real Estate Service, Inc.

View Auction

View Catalog



ONLINE Bidding Only Closes Thursday, Nove...
Fowler Auction & Real Estate Service, Inc.

View Auction

View Catalog



Stone Brothers Auction, LLC

View Auction

View Catalog

[ I'm Looking For... 🔍 ] 👤 Create Account ➜] Login

A Word From Mickey Fowler  Who is Fowler Auction?  Contact Us

   

**KBR International Construction Firm Quarterly Industrial Auction**

**KBR Construction Company - Quarterly Vehicle, Equipment & Industrial Tool Auction**
Online Only
Date: Oct 26, 2018
Pearce & Associates

View Auction

View Catalog



**179 Acres± Of Prime Real Estate In 8 Tracts (Highway 72 In Athens)**
On-site bidding
LIVE Auction Thursday, October 25th
Fowler Auction & Real Estate Service, Inc.

View Auction



**Mini Estate Auction: Vintage & Antique Furniture**
Online Only
Date: Oct 25, 2018
Horton Auction & Real Estate

View Auction

View Catalog



**Medical Equipment & Office Furniture**
Online Only
ONLINE Bidding Only Closes Tuesday, Octob...
Fowler Auction & Real Estate Service, Inc.

View Auction

View Catalog



**Watts Bar River View Lots Auction - Spring City, TN**
Online Only
Date: Oct 23, 2018
Stone Brothers Auction, LLC

View Auction

View Catalog



**90.59 Acres± Of Prime Real Estate To Be Offered In 3 Tracts (near Elk River & Tennessee River in Limestone County)**
On-site bidding
LIVE Auction Tuesday, October 23rd
Fowler Auction & Real Estate Service, Inc.

View Auction



**Hendricks Estate - Antiques, Tractors, Gas Engines, Personal Property**
Live with Online Bidding
Date: Oct 20, 2018
Aumann Auctions, Inc.

View Auction

View Catalog



**(2) Mobile Homes On 1.5 Acres±**
On-site bidding
LIVE Auction Saturday, October 20th
Fowler Auction & Real Estate Service, Inc.

View Auction



**House & 94 Acres± To Be Offered In 3 Tracts**
On-site bidding
LIVE Auction Thursday, October 18th
Fowler Auction & Real Estate Service, Inc.

View Auction

 



**Collectible Coins & Currency, Furniture, Tools & More**

Online Only

ONLINE Bidding Only Closes Thursday, Octob...

Fowler Auction & Real Estate Service, Inc.

View Auction

View Catalog



**Another Fantastic Firearm Auction**

Online Only

Preview: October 15th

Mayo Auction & Realty

Auction Info

Bid Now



**Fishing Lures, Rods & Reels Lifetime Collection Part 1**

Online Only

Online Now!

Aumann Auctions, Inc.

Auction Info

Bid Now



**18.6 Acres± In 3 Tracts With 3-Bedroom Brick House**

On-site bidding

LIVE Auction Thursday, October 11th

Fowler Auction & Real Estate Service, Inc.

View Auction



**0.5 Acre± Commercial Lot In Madison County**

Online Only

Date: Oct 11, 2018

Fowler Auction & Real Estate Service, Inc.

View Auction

View Catalog



**89 Acres± of Prime Real Estate In Tracts With House (Athens, Limestone County, AL)**

On-site bidding

Date: Oct 4, 2018

Fowler Auction & Real Estate Service, Inc.

View Auction



**Alabama Power Company Real Estate Auction**

Online Only

Date: Oct 3, 2018

Pearce & Associates

View Auction

View Catalog

**Contents Of Storage Unit: Sofas & Television**

Online Only

ONLINE Bidding Only Closes Monday, Octob...

Fowler Auction & Real Estate Service, Inc.

View Auction

View Catalog



**2018 Annual Online Fall Equipment Auction**

Online Only

Thursday, September 27, 2018

Taylor Auction & Realty, Inc.

Auction Information

24 Displaying

**About Fowler Auction & Real Estate Service, Inc.**

Fowler Auction & Real Estate Service, Inc. has earned the reputation as "The Preferred Auction Company" in Alabama, Tennessee and Georgia with over 40 years in the industry.

Fowler Auction & Real Estate

| 1 | 2 | 3 | 4 | ... | 20 |

**Contact Us**

⊙ 8719 Highway 53
Toney, AL 35773

☎ (256) 420-4454

✉ info@fowlerauction.com

Service, Inc. is licensed by the Alabama Auctioneers Association, the Tennessee Auctioneers Association and the Georgia Auctioneers Association.

Fowler Auction & Real Estate Service uses Live and Online Auctions to liquidate real and personal property from starter homes to large estates – small to large farms – foreclosures and bank liquidations – estates – farm equipment – heavy equipment – trucks – boats – small businesses – large commercial complexes – and much more.

If You Have It... We Can Sell It.

The Fowler Auction Team is ready to assist you to make the selling of your property stress-free from beginning to end.

At Fowler Auction, the foundation of our success is each team member's passion to "Turn Assets Into Cash" for our sellers and to exceed the expectations of our buyers.

Contact us today to "Turn Your Assets Into Cash" or let us help you find the treasure you have always wanted!

Email info@fowlerauction.com
Phone: (256) 420-4454
Toll Free (866) 293-0157

OUR AUCTIONEERS
Mickey Fowler, CAI, CES, AARE: ALSL466, TNSL1442, TNFIRM2315, GASL1394
Daniel Culps, CAI: ALSL5070, TNSL5890
Royce Hornsby, AA2974
Greg Bottom, AA2959
Daniel Smith, AA3002



Copyright © 2019 - All Rights Reserved

# Medical Equipment & Office Furniture

Go Back (https://www.fowlerauction.com/project/details/407

by Fowler Auction & Real Estate Service, Inc.

  

  

  

  

  

  

  

  

  

  

 

### Conducted By

**Fowler Auction & Real Estate Service, Inc.**

(256) 420-4454

Visit Company Site (https://www.fowlerauction.com/)

### Ask The Auctioneer

**Name:**

**Phone Number:**

**Email:**

**Question:**

Submit Question

About Fowler Auction &
Real Estate Service, Inc.

Contact Us

8719 Highway 53

Fowler Auction & Real Estate Service, Inc. has earned the reputation as "The Preferred Auction Company" in Alabama, Tennessee and Georgia with over 40 years in the industry.

Fowler Auction & Real Estate Service, Inc. is licensed by the Alabama Auctioneers Association, the Tennessee Auctioneers Association and the Georgia Auctioneers Association.

Fowler Auction & Real Estate Service uses Live and Online Auctions to liquidate real and personal property from starter homes to large estates – small to large farms – foreclosures and bank liquidations – estates – farm equipment – heavy equipment – trucks – boats – small businesses – large commercial complexes – and much more.

If You Have It… We Can Sell It.

The Fowler Auction Team is ready to assist you to make the selling of your property stress-free from beginning to end.

At Fowler Auction, the foundation of our success is each team member's passion to "Turn Assets Into Cash" for our sellers and to exceed the expectations of our buyers.

Contact us today to "Turn Your Assets Into Cash" or let us help you find the treasure you have always wanted!

Email info@fowlerauction.com
Phone: (256) 420-4454
Toll Free (866) 293-0157

OUR AUCTIONEERS
Mickey Fowler, CAI, CES, AARE:
ALSL466, TNSL1442,
TNFIRM2315, GASL1394
Daniel Culps, CAI: ALSL5070,
TNSL5890
Royce Hornsby, AA2974
Greg Bottom, AA2959
Daniel Smith, AA3002

Toney, AL 35773

☎  (256) 420-4454

✉  info@fowlerauction.com
   (mailto:info@fowlerauction.com)

 (http://www.marknetalliance.com/)

Copyright © 2017 - All Rights Reserved

Case 18-83207-CRJ11   Doc 60   Filed 01/11/19   Entered 01/11/19 08:47:51   Desc Main
Document      Page 28 of 29

# EXHIBIT M

1) Any and all leases or contracts or documents evidencing ownership or a possessory interest in a storage facility or a location or real property in which items may be stored or kept for safekeeping and/or storage.

2) Receipts for any and all equipment sold or loaned to any individual or entity within one (1) of the filing of the Chapter 11 bankruptcy petition on 10/26/18 or after the date of the filing of the petition.

3) Copies of bank account statements of the Debtor for one (1) year prior to the filing of the Chapter 11 bankruptcy petition on 10/26/18 and of all post-petition bank statements.